IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                 CASE NO. 1:03-cv-00090-MP-AK

JACK CARL RYALS,

    Defendant.

_____/

**O R D E R**

This matter is before the Court on Doc. 16, Plaintiff's motion for summary judgment. The parties do not dispute any significant material facts relating to Defendant's liability. Instead, the parties debate whether the Plaintiff is entitled to bring this action. Such issues are a question of law for this Court to decide, and therefore a matter properly disposed of on summary judgment. For the reasons discussed below, the Court holds that summary judgment is appropriate for the Government. Additionally, the Court holds that it is without jurisdiction to ascertain the merits of Counts One through Eight of Defendant's counterclaims. Finally, the Court grants the Government's motion to dismiss Counts Nine and Ten of Defendant's counterclaims.

I. STATEMENT OF FACTS

Defendant failed to pay taxes to the United States ("the Government") for the years 1977 and 1978, and was adjudicated to owe $526,465.43 in taxes, penalties, and interest by Order and Decision on February 28, 1989. See Doc. 1. The taxes owed by Defendant were assessed on June 22, 1989, see Doc. 1 & Doc. 5, but Defendant has failed to pay the assessments as of the date of this opinion. The amount of tax liability has been agreed upon and is not disputed by

either party. Doc. 21. Instead, the parties dispute, among other things, whether the statute of limitations has run on the Government's ability to pursue collection prior to the time of the Government filing this claim against Defendant.

Defendant submitted an offer-in-compromise on August 18, 1997 pursuant to 26 U.S.C. § 6331(k) relating to the 1977 and 1978 tax liabilities. See Doc. 17-1 at 1. Although there is some discrepancy over the date of the rejection, it appears that Defendant appealed the initial rejection of his offer-in-compromise, which was pending until either January 25, 2000 – at which time the Government again rejected the offer – or January 7, 2000 – at which time Defendant claimed to have rescinded the offer. Doc. 21.

Defendant again submitted an offer-in-compromise on June 14, 2000 to the Government to settle the tax liabilities assessed against him. That offer was initially rejected by the Government and again appealed by Defendant, until ultimately rejected by the Government on March 12, 2002. Doc. 17-1 at 2.

Throughout the process by which Defendant submitted offers-in-compromise to the Government, he worked closely with an IRS officer named Maureen Quinn. Id. at 4. Although there is some dispute as to the extent of the communications between Quinn and Defendant, Quinn served, at a minimum, as a middle-woman and resource for Defendant as he attempted to satisfy the judgment entered against him in favor of the Government.

During the pendency of the offers-in-compromise submitted by Defendant, Defendant also filed a Form 1040X, Amended United States Individual Income Tax Return, on or around May 26, 2000, seeking a refund for the years 1992-99. Defendant was seeking refund of amounts allegedly unlawfully seized by the IRS and applied to Defendant's earlier tax

deficiencies. As will be discussed *infra,* the parties dispute whether these forms were properly submitted or rejected by the IRS. See infra pp. 10-16. Similarly, Defendant also filed a Form 1040X for the years 2000 & 2001 seeking a return of illegally seized earnings.

## II. STANDARD FOR SUMMARY JUDGMENT

Under federal rules, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of a fact is based on whether it is a legal element of a claim that might affect the outcome of a case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, an issue must be considered "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

On a motion for summary judgment, the Court must consider whether there is such disagreement that the fact-finding talents of a jury are required, or instead whether the facts as proven by the parties allow only one outcome. See Anderson, 477 U.S. at 251-52. Of course, the moving party "always bears the initial burden of informing the district court of the basis for its motion . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When moving for summary judgment, the moving party must demonstrate the absence of any genuine issue to any material fact. Adickes v. S.H. Cress & Co., 398 U.S. 144, 157 (1970). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Any concerns secondary to the complaint are to be disregarded in determining whether to grant a motion for summary judgment. McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003). Finally, the Court

shall consider the movant's motion and evidence in the light most favorable to the nonmoving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  Where reasonable minds may draw different conclusions from accepted facts, a court has no choice but to deny summary judgment.  Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

### III. DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant has raised three affirmative defenses in his answer to the Government's action: estoppel, laches, and statute of limitations.  Each is discussed in turn below.

A. Estoppel

Defendant claims that the Internal Revenue Service enticed him into filing offers-in-compromise, thereby extending unfairly the statute of limitations.  See Doc. 5.  Defendant, however, cannot successfully raise the defense of estoppel against the government where an agent of the Government has purported to advise the taxpayer.   Even if Defendant's claim in regards to the advice given by Revenue Officer Maureen Quinn were accepted as true – namely that Defendant's offers-in-compromise would be given consideration and would likely be accepted – Defendant cannot maintain that the Government is estopped from pursuing one of its sovereign powers, the collection of taxes, because of the words of a special agent. Although estoppel may be appropriate theoretically where there is an "affirmative conduct," see INS v. Hibsi, 414 U.S. 5, 8 (1973) (per curiam), the Eleventh Circuit has specifically disavowed such a result where the government acts as a sovereign.  See FDIC v. Harrison, 735 F. 2d 408, 411 (11th Cir. 1984) ("Activities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel while actions involving the exercise of exclusively governmental or sovereign powers are not.").  Defendant's claim to the

contrary is without merit.

B. <u>Laches</u>

Defendant also claims that the Government is barred by the doctrine of laches from pursuing claims against the Defendant. Doc. 5. Defendant claims that inequity would result from allowing the Government to entice Defendant into extending the statute of limitations on his debts. Doc. 5. Regardless of the veracity of Defendant's claims regarding the Government's supposed enticement, this defense is also without merit. "It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." <u>United States v. Summerlin</u>, 310 U.S. 414, 416 (1940); <u>see also</u> <u>United States v. Nicholl</u>, 25 U.S. (12 Wheat.) 505, 509 (1827) (finding that "laches is not imputable to the government"); <u>United States v. Delgado</u>, 321 F.3d 1338, 1348-49 (11th Cir. 2003); <u>Herman v. South Carolina Nat. Bank</u>, 140 F.3d 1413, 1427 (11th Cir. 1988). Furthermore, in the context of sovereign powers, the Eleventh Circuit has specifically recognized that laches cannot bar the enforcement of government tax claims. <u>Lucia v. United States</u>, 474 F. 2d 565, 570 & n.13 (5th Cir. 1973)[1].

C. <u>Statute of Limitations</u>

The final defense raised by Defendant is one related to the statute of limitations for the Government's claim. The statutes of limitations period for the Plaintiff's claim was altered three times by Congress in order to modify the authority of the Internal Revenue Service to extend the ability to collect assessed taxes. The relevant statutes were passed by Congress in 1998, 2000, and 2002, respectively. The issue in this case is the effect of each statute on the Plaintiff's right

---

[1] Decisions rendered by the Fifth Circuit prior to the close of business on September 30, 1981 are binding precedent on the Eleventh Circuit. <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

to bring this collection action.

The first relevant Act, the Internal Revenue Service Restructuring and Reform Act of 1998, Public Law 105-206, 112 Stat. 685, ("Reform Act") was passed by Congress and took effect on January 1, 2000. The Reform Act amended 26 U.S.C. § 6502(a)(2). Due to the amendment, the Internal Revenue Service ("IRS") could no longer obtain a waiver of the statute of limitations period to be applied in exchange for consideration of an offer-in-compromise, but could, to a certain extent, continue to rely on previous agreements to suspend the limitations period. Prior to that time, the IRS was free to negotiate with each individual taxpayer to extend the ten-year limitations period. Under the Reform Act, where a taxpayer has agreed before December 31, 1999, to extend the ten-year period, such extension automatically expires on the latest of: (1) the last day of the 10-year period, (2) December 31, 2002, or (3) the 90th day after the end of an extension in connection with an installment agreement. See Reform Act, 112 Stat. 685. The Reform Act was intended to work in conjunction with Treas. Reg. § 301.7122 to provide that the levying of an assessment was suspended during the consideration of an offer-in-compromise.

Subsequent to the passage of the Reform Act, Congress passed another act affecting the statutes of limitations period applicable to collection actions such as the one at hand. The Community Renewal Tax Relief Act of 2000, Public Law 106-5543, 114 Stat. 2763, ("Renewal Tax Act") eliminated the ability of the IRS to contractually suspend the statute of limitations as of the date of the Act's enactment, December 20, 2000.

Finally, Congress passed the Job Creation and Worker Assistance Act of 2002, Public Law 107-147, 116 Stat. 21, ("Worker Assistance Act") which restored the IRS' ability to suspend the statute of limitations during the pendency of the consideration of an offer-in-

compromise.

It is the interplay of the Reform Act, the Renewal Tax Act, and the Worker Assistance Act which is in question here. Each statute was intended by Congress to somehow affect the calculation of the statute of limitations period applicable to IRS tax collection suits. In the absence of these three Acts, the ordinary statute of limitations period for the Government's claim against Defendant would have lapsed ten years after entry of the Government's assessment on June 22, 1989; in other words, on June 22, 1999.

This Court was unable to discover similar cases where the interplay between the three statutes was specifically at issue. Defendant's claim that these congressional changes prevent the Government from timely filing its claim has more merit than Defendant's two other affirmative defenses, but results in a similar holding from this Court. The Government's position that it complied with the literal meaning of the statutes in question comports more directly with the "plain meaning" intended by Congress; a plain meaning that even Defendant does not wholly dispute. See Doc. 32.

As a threshold matter, it is worth noting that:

> limitation statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government. In effect, a period of limitations runs against the collection of taxes only because the Government, through Congressional action, has consented to such a defense. Absent Government consent, no limitation defense exists.

Lucia, 474 F. 2d at 570 (citation omitted); see also Chase Sec. Corp. v. Donaldson, 325 U.S. 304 (1945) (holding that no fundamental right to shelter *via* statute of limitations exists); accord McDonald v. United States, 315 F.2d 796 (6th Cir. 1963); Pacific Coast Steel Co. v. McLaughlin, 61 F.2d 73 (9th Cir. 1932); Loewer Realty Co. v. Anderson, 31 F.2d 268 (2d Cir. 1929) (statutes of limitations dealing with payment of taxes must be construed strictly in favor of

government).

The first offer-in-compromise was submitted by Ryals under the original IRS rules which provided that the statue of limitations period is tolled from the date the offer is submitted through the date the offer is rejected, plus one year. The original assessment against Ryals was made on June 22, 1989. Defendant then submitted his first offer-in-compromise on August 18, 1997. Doc. 17-1 at 1. This offer was rejected on January 25, 2000. Id. at 2. Thus, by adding the period of time in which the offer was pending, plus one year, to the end of the ordinary ten year limitation period ending June 22, 1999, the limitations period for the Government's collection action was extended to November 29, 2002.[2]

By the time the IRS rejected Defendant's offer-in-compromise, the Reform Act had taken effect. Thus, since November 29, 2002 is before December 31, 2002, it would appear that the Reform Act extended the statute of limitations period to December 31, 2002. Nevertheless, Defendant claims that the Reform Act was not intended to extend the statute of limitations beyond the extended period expiring on November 29, 2002. The Act, however, clearly states that extensions of the limitations period obtained prior to December 31, 1999:

> shall expire on the latest of -
> (A) the last day of such 10-year [collection] period;
> (B) December 31, 2002; or

---

[2] The parties dispute whether the end of the limitations period fell on November 29, 2002, as the Plaintiff alleges, or November 28, 2002, as the Defendant claims. The discrepancy, however, is irrelevant for purposes of this order, as the same holding would be reached regardless of which date is chosen. Nevertheless, according to this Court's calculations, adding twenty-nine months and seven days (the period the first offer-in-compromise was pending) to the June 22, 1989 original statute of limitations date, plus one year, would bring the statute of limitations ending date to November 29, 2002.
  Additionally, Defendant claims that the offer-in-compromise was effectively rejected on January 7, 2000. Again, even taking this for true, it would not effect the Court's holding.

>   (C) in the case of an extension in connection with an installment agreement, the
>   90th day after the end of the period of such extension.

IRS Restructuring and Reform Act of 1998, Public Law 105-206, 112 Stat. 685. Thus, going from the face of the statute, it appears clear to this Court that, as a result of the Reform Act, the collections period was extended in this case to December 31, 2002. Had Congress intended the Act to do otherwise, they could have stated that the collections period expires on the *earliest* of the three dates, not the *latest*. This Court was able to find one other district court case in which this issue was addressed – a similar conclusion was reached in that case. See United States v. Cook, No. 02-CV-09475, 2004 WL 690804, at *7 (E.D. Pa. 2004).

Ryals submitted a second offer-in-compromise on June 14, 2000. Doc. 17-1 at 2. This offer was rejected on March 12, 2002. Id. The time between the submission of this offer-in-compromise and its subsequent rejection falls between the effective dates of all three statutes. After carefully reviewing the matter, the Court finds that the second offer-in-compromise extended the statute of limitations period six months and six days, which is the time from the submission of the offer-in-compromise to the December 20, 2000, the effective date of the Renewal Tax Act.³ The statute of limitations period then ceased being tolled during the duration

---

³ Defendant claims that the provisions in the Renewal Tax Act eliminating the ability of the IRS to toll or suspend the collections period during the pendency of an offer-in-compromise were to be retroactively applied. See Doc. 21 at 4. The Act, however, clearly states that the effective date of this specific change was to be December 20, 2000 - the effective date of the Renewal Tax Act - while other changes in that section of the Act were to "take effect as if included in the provisions of the Internal Revenue Service Restructuring and Reform Act of 1998 to which they relate." Renewal Tax Act § 313(f), 114 Stat. 2763; see id. § 313(b) (provision removing the reference to subsection (i)(5) of 26 U.S.C. § 6331(k)(3), thus effectively eliminating the ability of the IRS to toll or suspend the collections period during the pendency of an offer-in-compromise). This Court views such text as indicative of Congress' intent on this issue; namely, that application of this provision was to be prospective only. Defendant himself acknowledges the reasonableness of this view. See Doc. 32 at 8.

of the Renewal Tax Act, which spanned from December 20, 2000, to March 9, 2002. On March 9, 2002, the Worker Assistance Act took effect, which reinstated the suspension of the statute of limitations period during the pendency of an offer-in-compromise. <u>See</u> <u>supra</u> p. 6. Thus, the statute of limitations was again tolled for an additional three days, which is the time from the effective date of the Worker Assistance Act to the second offer's ultimate rejection.

As a result, the statute of limitations on this claim was extended an extra six months and nine days from December 31, 2002, the extended collections date created by the first offer-in-compromise. Thus, the collection period was extended until July 9, 2003. As this action was commenced on May 20, 2003, the court finds that this action was timely commenced.

## IV. DEFENDANT'S COUNTERCLAIMS

Defendant has brought multiple counterclaims against the United States alleging that the Government wrongfully seized Defendant's property. Due to distinguishing characteristics, Counts One through Eight of Defendant's Counterclaims will be analyzed separately from Counts Nine and Ten.

A. <u>Counts One through Eight</u>

Defendant filed his alleged refund claims for the years 1992 through 1999 with the Internal Revenue Service on May 26, 2000. Defendant subsequently brought these counterclaims on June 25, 2003. Counts One through Eight of Defendant's counterclaims are essentially refund actions. For example, in Count One of his complaint, Defendant claims to be "entitled to a refund of $15,400 which was erroneously and illegally taken from him." Doc. 5 at 5-6. Each of Defendant's counterclaims requests similar relief for supposed illegal levies.

Defendant's claims rest on the belief that he filed valid refund claims with the Internal Revenue Service that were ultimately rejected by the Atlanta Service Center. Doc. 21 at 14.

Defendant's refund claims were based on the belief that 26 U.S.C. § 6334(a)(9) prevented the Government from levying his wages during the aforementioned time periods. The refund claims allegedly filed by Ryals were entered into evidence by Defendant as exhibits to his counterclaim. See Doc. 5. Those exhibits demonstrate that the refund claims had been stamped as "received," although the stamp was later crossed out. As such, Plaintiff claims that he is due a refund for the inappropriate seizure of his wages.

The Government, however, contends that this Court should dismiss Counts One through Eight of Defendant's counterclaim for lack of subject matter jurisdiction. Contending that the alleged refund claims "only contained the signature of Ryals and were filed under his social security number notwithstanding that the original returns were signed by both him and his wife and filed under her social security number," Doc. 16 at 12, the Government argues that this Court is without jurisdiction to decide the case where Defendant's refund claims were improperly filed with the Internal Revenue Service. Essentially the crux of the Government's argument is that in failing to correctly sign the refund claims for 1992-1999, Defendant failed to put the IRS on notice of his claim. As such, the argument goes, this Court is without jurisdiction to hear Defendant's action since Defendant did not properly comply with administrative requirements.

Since IRS assessments are presumptively correct unless the taxpayer alleges fraud, the burden is upon the taxpayer to "prove the facts establishing the invalidity of the tax." United States v. Anderson, 269 U.S. 422, 433 (1926). Thus, the taxpayer has the burden of proving that the assessment was incorrect as well as the correct amount that the assessment should have been. See Helvering v. Taylor, 293 U.S. 507, 515 (1935); Mays v. United States, 763 F.2d 1295, 1297 (11th Cir. 1985) (per curiam).

Refund suits to recover overpaid federal taxes are properly brought only in the Claims Court or in federal district court. 28 U.S.C. § 1346. Therefore, a refund suit is appropriate before this Court.  In order for this court to have subject-matter jurisdiction over the action, however, an administrative refund claim must have been duly filed and rejected (or otherwise not acted upon) by the Internal Revenue Service.  26 U.S.C. § 7422(a)[4]; Mutual Assurance, Inc. v. United States, 56 F.3d 1353, 1354 (11th Cir. 1995).

 Defendant claims to have submitted 1040X forms in 2000 for years 1992 through 1999. Defendant states, for instance, that "[a] form 1040X was used since . . . [Treasury Regulations provide] that a 1040X is the appropriate form for claiming a refund relating to federal income taxes."  Doc. 5 at 6; accord 26 C.F.R. § 301.6402-3(a)(4).  Defendant further asserts that the "Form[s] 1040X along with the narrative and exhibits were adequate and sufficient to place Internal Revenue Service on notice of the basis for the claim."  Doc. 5 at 6-7; Doc. 21 at 10 ("[T]he Internal Revenue Service was more than apprised as to scope and nature of the claim, the underlying facts giving rise to the claim, the applicable law involved, and the relief requested."). In other words, Defendant's position is that his filings amounted to informal rather than formal claims.  See Doc. 21 at 8-10.

Although such informal filings are permissible, Vintilla v. United States, 931 F.2d 1444, 1446 (11th Cir. 1991), the federal circuits have developed varying guidelines for the allowance

---

[4]26 U.S.C. § 7422(a) provides:
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

of such filings. While the formality of the requirements varies across the circuits, the United States Supreme Court has held that tax forms must comply with prescribed requirements in order to be considered validly filed. See, e.g., Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 459-60 (1930); Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930). In particular, the Court has stated that inclusion of the taxpayer's signature is a prerequisite to the validity of a tax return. Badarocco v. Commissioner, 464 U.S. 386, 396-97 (1984); Zellerback Paper Co. v. Helvering, 293 U.S. 172, 180 (1934); Doll v. Commissioner, 358 F.2d 713 (3d Cir. 1966) (per curiam).

The Internal Revenue Code itself states that "a claim which does not comply [with formal requirements] . . . will not be considered for any purpose as a claim for refund." 26 C.F.R. § 301.6402-2(b)(1) (2005). The formalism of the Code is predicated on the belief that the Internal Revenue Service must receive actual notice of a taxpayer's claim, and that a claimant's failure to conform with published procedures may not serve to later exculpate that claimant. Some courts, however, have occasionally liberalized this requirement by finding that sufficient notice was given to the IRS even where formal requirements were not satisfied. C.I.R. v. Lundy, 516 U.S. 235, 248-49 (1996). The question before this Court is whether Defendant has shown that the IRS was on notice as to his refund claims. If Defendant is unable to make such a showing, this Court must dismiss these counterclaims for lack for subject matter jurisdiction.

Although the Eleventh Circuit has yet to determine whether a signature is required in determining the validity of a refund action, other circuits have held such a requirement to be indispensable. The Sixth Circuit, for example, has held that refund letters must fully comply with IRS requirements of a signature. Tobin v. Tomlinson, 310 F.2d 648 (1962). In Tobin, the court noted that the supposed refund letter filed by the taxpayer lacked a signature attesting to its

accuracy.  Quoting the Supreme Court in Angelus Mining Co. v. Commissioner, 325 U.S. 293, 299 (1943), the Sixth Circuit stated:

> [I]t is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund.  The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim.

Tobin, 310 F.2d at 652; see also Prussner v. United States, 896 F.2d 218 (7th Cir. 1990) (finding substantial compliance was not achieved where tax form lacked a signature).  But cf. BCS Financial Corp. v. United States, 118 F.3d 522. 524 (7th Cir. 1997) (holding opposite).

Similar to the Sixth Circuit's finding, the Fifth Circuit has held that a district court is stripped of jurisdiction where the taxpayer failed to comply with filing requirements.  Gustin v. United States, 876 F.2d 485 (5th Cir. 1989).   In Gustin, the claimant sought to file a Form 843 but had mistakenly placed an incorrect date on the form.  Under those circumstances, the Fifth Circuit held that no formal claim for refund was filed.  The court recognized that a refund claim "should not be given a crabbed or literal reading, ignoring all surrounding circumstances which give it body and content."  Gustin, 876 F.2d at 489 (quoting American Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920 (1963)).  Nevertheless, the court held that the taxpayer in that case had failed to meet his burden of proving that his informal claim was sufficient to put the IRS on notice of his claim.  Gustin, 876 F.2d at 489.

According to the Internal Revenue Service, "the computer records of the Internal Revenue Service show that Ryals has filed no administrative claims for refund for the years 1992 through 1999."  Doc. 16 at 12.  As was stated above, such records are presumptively valid unless

shown otherwise by the taxpayer.  Helvering v. Taylor, 293 U.S. 507 (1935).  Where the taxpayer introduces sufficient evidence to show that the Commissioner's determinations were incorrect, however, the presumption vanishes.  Bone v. Comm'r of Internal Revenue, 324 F.3d 1289, 1293 (11th Cir. 2003) (citing Welch v. Helvering, 290 U.S. 111, 115 (1933)).

Defendant Ryals has failed to introduce evidence sufficient to overcome the IRS's presumption of validity.  Although the 1040X forms were likely received by the Internal Revenue Service, such receipt is not sufficient to ameliorate the shortcomings inherent in a flawed claim for refund.  Aside from the fact that the refund claims had "received" stamps placed on them at some point, Defendant has failed to demonstrate that the IRS indeed received those refund claims.  For example, Defendant has not explained the paradox between the supposed reception of his informal refund claims and the crossing out of the received stamps.  The burden is on Defendant to demonstrate that the Internal Revenue Service was incorrect in not considering his refund claims, and Defendant has not provided any evidence to overcome the IRS's presumption of validity under Helvering.

Therefore, in keeping with its sister circuits, this Court holds that Defendant's refund claims for the years 1992 through 1999 were improperly filed.  As such, this Court is without jurisdiction to adjudicate any claims relating to those actions.  Therefore, Counts One through Eight of Defendant's counterclaims are dismissed.

B. Counts Nine Through Ten

The Plaintiff admits that Ryals filed a refund claim on April 28, 2003 for the years 2000 and 2001.  Doc. 16 at 12.  Moreover, as the Government further admits, "where Ryals established an overpayment of tax or [] the Government has not established that he has other income, this court has subject matter jurisdiction over years 2000 and 2001."  Doc. 16 at 12-13.

Therefore, neither party disputes the Court's jurisdiction over Counts Nine and Ten of Defendant's counterclaim.   Nonetheless, subject matter jurisdiction in a case must be determined by the Court.  Goodman *ex rel*. Goodman v. Sipos, 259 F.3d 1327, 1331, 1331 n.6 (11th Cir. 2001).  Accordingly, the Court holds that Defendant's properly filed refund claims for 2000 and 2001 give this Court subject matter jurisdiction over these claims.

Counts Nine and Ten of Plaintiff's counterclaim state that the IRS levy of wages from 2000 and 2001 were "erroneous, illegal, and a violation of Ryals' due process rights."  Doc. 5 at 18, 20.  According to Defendant, the IRS levy was illegal because of an improper calculation by the IRS.  Doc. 21 at 12.  Defendant contends that the dividend income he and his wife received as tenants by the entirety was improperly construed as constituting wages, salary, or other income as contemplated by 26 U.S.C. § 6334(d).  Doc. 21 at 12.  Defendant argues that Florida law prevents such a levy of tenancy by the entirety property. In support of his claim, Defendant cites cases such as Winters v. Parks, 91 So.2d 649 (Fla. 1956), and United States v. Am. Nat'l Bank, 255 F.2d 504 (5th Cir. 1958).

The cases cited by Defendant, however, are undermined by United States v. Craft, 553 U.S. 274 (2002), and its progeny.  In Craft, the issue before the Court was whether state law would trump the ability of the IRS to attach a lien to a taxpayer's tenancy by the entirety property.  Noting that "the statutory language authorizing the tax lien 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer may have,'" the Court found that federal law in this instance overcomes state law.  Craft, 535 U.S. at 283 (quoting United States v. Nat'l Bank, 472 U.S. 713, 719-20 (1985)).  As stated by the Court in Craft:

"We therefore conclude that respondent's [ ] interest in the entireties property constituted

'property' or 'rights to property' for the purposes of the federal tax lien statute.  We recognize that Michigan makes a different choice with respect to state law creditors . . . . But that by no means dictates our choice."

Craft, 535 U.S. at 288.

Defendant argues, however, that the Craft Court "merely ruled that a taxpayer spouse has an interest in property which is encumbered by a federal tax lien." Doc. 21 at 14. Defendant further states that Craft ruled "the existing Notice of Levy was legally ineffective to reach tenancy by the entirety property." Doc. 21 at 14.  Accordingly, Defendant would have this Court interpret Craft so as to exclude that Court's determination with respect to tenancy by the entirety pproperty.  Such an argument abuses the very essence of Craft.

While Florida, like Michigan, may prevent a levy on tenancy by the entirety property by a creditor to satisfy the individual debt of a spouse, Doc. 21 at 13, 26 U.S.C. § 6334 recognizes no such limitations.  Additionally, the Eleventh Circuit recently held that "the Internal Revenue Service has the authority to divide tenancy by the entirety property to satisfy the tax obligation of one spouse."  In re Sinnreich, 391 F.3d 1295, 1297 (11th Cir. 2004).  The Sinnreich court noted that Craft "announced the rule that the IRS's federal statutory powers to tax and attach liens to property trumped any state property rights afforded to a taxpayer who holds property by the entireties with her spouse."  Id. at 1298.  This Court is bound by such precedent and finds Craft directly applicable to the instant case.  Defendant's argument that tenancy by the entirety property may not be levied by the IRS is therefore without merit.  Therefore, summary judgment is appropriate for the Government as to Counts Nine and Ten of Defendant's counterclaims.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Plaintiff's motion for summary judgement, Doc. 16, is granted.  The Defendant is ordered to pay the United States $1,678,065.01, plus fees and interest as provided by law.

2. Counts One through Eight of Defendant's counterclaims are dismissed for lack of subject matter jurisdiction.

3. Summary judgment is granted for the Plaintiff with respect to Counts Nine and Ten of Defendant's counterclaims.

4. The Clerk is directed to close this case.

**DONE AND ORDERED** this  *8th* day of December, 2005

           *s/Maurice M. Paul*
           Maurice M. Paul, Senior District Judge